And again, Mr. Stegall. We are again here with the beginning of a investigation that I don't know what else I could allege other than what I did and quoted on page 10 and 11 of the brief in paragraph 25 and 26 that the officers did this extensive investigation. You know, by asserting that the officers lied, as opposed to making a mistake about the facts, the complaint alleges a certain intent. What's the factual basis for that intent? Do you think that might be a necessary allegation that's missing from the complaint? Well, intent can be alleged generally, of course, but I didn't see it necessary because the fact that these officers knew they had nothing to connect this van with a trailer that was allegedly used to cart away two lawnmowers, which no longer exist. They do an extensive forensic analysis. They search his home place and every place, find nothing. Judge Baker went off on that search and I used it as, well, okay, you did the search. I didn't say anything wrong with the search. You found nothing. You had done an investigation before. You found nothing. You had nothing connecting this van with anything to do with lawnmowers or this trailer found, and yet you indict him. And, of course, the other rule of law that's involved is that the Champaign County had not read the Colina case as, of course, the Assistant State's Attorney was verifying information. So you're saying, well, tell me this, would the Assistant State's Attorney be entitled to qualified immunity if we were to find that he's not entitled to absolute immunity? Well, I think that's a possibility depending on what he knew. But, of course, at this stage we don't know what he knew. The officers went to him. He obviously didn't have first-hand knowledge. Well, you say we don't know, but you conceded that he relied entirely on the officers for the information and belief. Yes. Of course, I'd like to know that, but it seemed obvious he wasn't out looking at the scene. I think that's a reasonable conclusion to make, and I'll stand on it, that the officers told him, and he signed the complaint as the Seattle prosecutor did in the Colina v. Fletcher as, of course, verifying the information. And by doing that, of course, he stepped out of his role as a prosecutor into a witness. Well, in what way did he verify the information? Signed it. The actual... Does it say verify? Yes. Subscribed to and sworn to, and he's the one signing it as the witness. He also signed it as the attorney. But he signed as a witness? Yes. I allege that. And actually, the original complaint, Docket 1, Exhibit 1, contains the actual information. So the actual information was in the record when Judge Baker dismissed it and said he's got King's X because he's a prosecutor. And of course... Mr. Stegall, could you address the effect of Mr. Olson's waiver of a preliminary hearing when he was brought before the court? Well, he'd already been arrested by then. Right. I understand the arrest itself is certainly potentially an independent violation. But in terms of long-term damages and the like, in theory, at least, I thought a preliminary hearing was supposed to provide an opportunity to protect yourself against a baseless charge. Of course, that is available. But if we're dealing in terms of estoppel, he prevailed because they not only pressed it, and it is a nullity. Later on, right? Yeah, it's a nullity. I remember a GO case you had here. It involved a false confession and there were findings and it was dismissed. You reversed and said collateral estoppel didn't apply. Well, it can't have stopped anything because it's a nullity. It was dismissed by the prosecution. The problem there is you're seeking damages from individual officers. The state makes the decision to how it handles the prosecution. This doesn't probably go directly to the validity of the complaint, but it's an issue you're going to need to deal with. Yeah. Well, you don't have many cases. I don't have much guidance out there about how to go after prosecutors and police. I'm just using what they usually do. It's amazing. We saw how that worked earlier this morning. Yes. Well, and also, Felina. I mean, it's real simple. Don't verify these complaints. And I made the assumption, give it in good faith. Champaign's got, I know of my own, I'm from Peoria, but they've got a large state's attorney's office. So he's not out there. I would be shocked if we learned he was out there in the scene ever. And this was right after the officers brought him the information. That's what the complaint is premised on. They gave him false information. I noticed Olson owns, or maybe owned, trailer camps in several states. Is he a substantial businessman? Yeah. He sold all of them. Came back to sell them. So he retired. Yeah. Home place. And he's back out, back to Florida now that all this is over. But that's where the damages come in. Just staying in Illinois for a long time. Yeah. He sold out in Texas and Florida. A good businessman. And of course, that kind of goes to what all this started is. He fixes everything. So, and there was a particular trailer that was abandoned. He fixed it. They left it out there. Somebody took it. He was like, well, I guess it wasn't ours. He's got a new trailer. Fine. I mean, who knows? That's how, that's the DNA tests. And they even test the feces of a deer. That's in one of the reports. I didn't allege that, but. Well, let's leave no stone unturned. Yes. Hearing about the back booking. Did he spend, did Mr. Olson spend time in jail? Only the booking. He might have over, I can't recall how long to get out. But he had a very competent defense lawyer. And he did the right thing. As criminal defense lawyers do, wait and wait. Finally, the prosecution realized. But then it took a year to get that done, as it often does. Okay. Thank you, Mr. Steele. So, Mr. Elwood, again. What I'd like to do for a few minutes is talk a little bit about the Kalina issue. And I'd like to make sure that the court understands what we're asking it to do here and what we're not asking the court to do here. We certainly aren't saying to this court, please create a conflict between your rulings in the Supreme Court and Kalina. And matter of fact, we're not saying that the general core ruling in Kalina isn't a valid ruling. But what we're saying is on the allegations of this complaint, we think at most, all we have here is an identity of a prosecutor signing an information. And when we look at the Buckley case and we ask, what is the standard that we're supposed to apply in determining whether or not the qualified immunity or in here absolute immunity applies, Buckley tells us that the court applies a functional test that considers the nature of the function performed and not the identity of the actor who performed it. And so I bring that up for this reason. If we were to look at the complaint as a play, what we have is that last aspect of Buckley, the identity of the actor who performed it. What we don't have- Did you make any argument below? Pardon me? Did you make any argument below that the assistant state's attorney had qualified immunity or did you rely solely on absolute immunity? I think the motion was addressed to absolute immunity. Yes, I think that's correct. But I would agree that they would have the ability to raise a qualified at a later date. But my reading of it was that there was only absolute immunity addressed. But back to my original point, when we look at this functionality test, if we adopt the pleadings and the arguments that counsel's making here in support of the plaintiff, what we're doing is we're saying that we don't have absolute immunity in this case because of the identity of the actor who performed the act, the signing of the information. What we're saying in our argument is simply this. The pleadings should show the function performed. And when we look at the information, as Your Honor asked, what we see is the signature, the undersigned being duly sworn, states upon information and belief that the facts set forth in the foregoing information are true. When we look up at the- Now, where is that that you're looking at? That's on the exhibit that counsel had referred to in his complaint, the information itself, Your Honor. And it's the small statement that appears right about just slightly below the middle of the case, a very small print. So what's that? That function is being a witness. So yes, the function here is taking some type of investigatory role. And I think when we look at the cases, some of the cases that this Court has decided, we look at the Williams case, which we understand is a district court case. We had the prosecutor signing documents and taking an investigatory role in the case. And when we look at what happened in Kalina, we had a situation where the prosecutor had actually signed this, sounds to me like a sophisticated affidavit, saying this is what happened and I attest to what happened. And I think that's the difference. When we look at, like, for example- What is the purpose of this statement? The purpose of this statement? Oh, in the information? Yeah. Yeah. It's to, I guess, I would have to say it's to give credence to the charge of the- Right, so what's the difference? There's a problem. There's actually a pretty fundamental problem here that may go well beyond this case, Mr. Elward. If, for example, this is about issuing an arrest warrant, right? That's correct. Now, if we had, if this were a search warrant and this were the affidavit, we'd say this is completely insufficient, right? Because you need details, if you've gotten information from other people, you need to explain why it's reliable, so on and so forth. And the Supreme Court has essentially applied the same standard to arrest warrants that it has to search warrants. So, I don't know how this information establishes probable cause. Well, that leads me to a second point, and I think this is critical as well. We don't know, and the allegations of the complaint are very careful to kind of walk a thin line as to what the judge considered. When we look at Kalina, I think we could make the conclusion that in Kalina, the judge looked at what the prosecutor gave him and issued it based on that document. I don't think that when we look at the complaint here that we can make that statement that the judge issued- Well, what is- We have a different case. What is there? Pardon? The judge issued a warrant based on the verified information from the Champaign County State's Well, what I'm saying, Your Honor, is I don't know if we have the full picture before us based on the state of the pleadings in this case as to what the judge considered in issuing the warrant. Let me go back to my question, okay? How is this probable cause? I take it what you're saying is it's not, and maybe there's some other basis. I honestly, Your Honor, I have never evaluated one of these from a judge's perspective, and I honestly don't know if that would be considered probable cause by itself. The warrant is applied for by a police officer, right? Pardon me? I'm sorry? Ordinarily, a warrant is applied for by a police officer, isn't it? I think it is many times. Yeah, I think it is many times. But in this case, the state's attorney is, with this, you know, this little, the undersigned, et cetera, being duly sworn, he is, he's the applicant, and he is stating that he believes that, you know, that there is a factual basis. On information and belief, he says that. Well, doesn't that mean he's engaged in the investigative role, like the police officer? He's telling what happened. I think he's relating what happened. If you tell me something, and I say, based on information and belief, I think this happened, based on what I was told. No, no. If I see it. No, no. There's a difference between saying, somebody told me this, this is what he told me, and saying, I believe that this is true. And he's saying, he believes that this is true. So he's making factual representations, you know, before there's any, you know, hearing or trial or indictment or anything. So isn't he part of the investigative team at this stage? I think more he's a message relayer. I kind of viewed him in that context, rather than part of the investigative team. I think part of the problem, as you indicated, we don't really know. And I think that's one of the issues that we. Are you saying the foregoing is a true, correct and complete copy of the instrument? I agree. But what I was saying is, we don't really know what the judge considered in this case. Well, we know that Olson very clearly alleged that there was no valid information on which to base the arrest warrant, and that the officers lied to the state's attorney. He continued to. You know, what I've been wondering throughout is, why is the exact nature of the lies necessary under Rule 8? I would think that an allegation that a police officer lied on an application for an arrest warrant would state a viable claim. We looked at the Burton case that we cited in the brief, and we think that simply making that bold statement isn't enough. I think he was obligated here to say why. I mean, he points out, certainly, that some of the tests that were done in this case as a result of the fingerprinting, et cetera, came back negative. But I think they don't quite go as far as to say that there was absolutely no evidence whatsoever at all. And again, my point that I keep trying to make is that we don't know what the judge considered. If the trial judge in issuing the warrant looked at the information but had other evidence in front of him, or other testimony in front of him, or other witnesses in front of him, then you can't make that statement that he relied specifically on the information signed by the prosecutor. And I think that's what distinguishes this case from Kalina. So how does that question get decided on the pleadings? I think it was incumbent upon them. Again, this was a, and I think it was a second... To have the evidence about everything that was in front of the state court judge pled in the complaint? Well, I don't think he has to have everything, but I think he has to have some inkling of what happened beyond just, I was wrong. And really, I... Here's what the record shows. Here's the information. There's no basis for it. You arrested me. What more do you need? The defendant was there and had counsel. You want the judge deposed, or what? Pardon me? You want the judge deposed? I guess if we got forced in this situation to find out what he considered. You don't want to say that. That'll be every case. You don't want to say that. You're going to depose the judge. That'll be every case. Mr. Elwort, maybe you can fill us in on the background, but what on earth was going on here with the DNA tests and the fingerprints about a trailer? From what I know... I've never heard of this. All I know, Your Honor, is this was just a part of a large investigation that was being conducted over a period of time, and that's really all I know about it. I'm sorry. About trailers in general, or a red trailer? About a widespread theft in the area of trailers, other items. For some reason, they were taking this very seriously. Well, they probably have nothing else to do in Champaign County. I don't know that. I think they do. I don't know that. I think they do. Thank you, Your Honor. Thank you. Okay, thank you, Mr. Elwort. Mr. Spiegel? I hope it may be helpful to Judge Hamilton's question, is that, yes, I did have the investigator look at the record, and that's all there is. The Illinois Code... And that's the kind of gloss on the allegations in a complaint that is permissible when a complaint has been dismissed on 12b-6. Yeah, I mean... It is. I'm just telling you. That's okay. And, well, the issue that you addressed is 725 of the ILCS 51079C of the Illinois Code of Criminal Procedure on 10, it was very troubling to me because it says on verified information the judge shall issue an error, shall or may issue the warrant, shall issue the warrant. Without considering probable cause? Nothing's said about a probable cause of hearing in that. And that was very... That concerned me a lot. I saw nothing. They didn't have dockets there, and I do look at these cases. I've done this a long time, and they're tough, and I, suing a state's attorney, I did take it into consideration, and I gave you the best in my complaint. And I mean, the lawnmowers, I got to agree with you, Judge Hamilton, as one who grew up on a farm, a lot of children probably run away with lawnmowers once in a while, but we didn't have extensive investigations back in my day. They turned up sometimes, and sometimes they didn't. Well, who knows? Okay, well, thank you very much, Mr. Steele. And we thank Mr. Elrod as well.